H: SINNING, *a Copartnership, etc., et al., Appellees,* v. A. J. SUMPTER, *Appellant.*

No. 17,430.

### SYLLABUS BY THE COURT.

1. VENDOR AND PURCHASER—*Chattel Mortgage—Payment—Subrogation.* Where the owner of a number of cattle sells them successively to two different purchasers, the first purchaser, if he buys in good faith and upon sufficent consideration, is entitled to the ownership and possession thereof, although he left the cattle temporarily in the possession of the seller; if, however, the second purchaser buys in good faith, and without knowledge of any fact which should put him upon inquiry as to the rights of the first purchaser, and he thereafter pays off a valid mortgage on the cattle, which contains such a description of the cattle that one not a party to the mortgage could by the description therein, aided by such inquiries as the mortgage suggests, identify the cattle mortgaged as the cattle purchased, the second purchaser is subrogated to all the rights of the mortgagee under such mortgage.

2. ——— *Same.* Where, in such case, the first purchaser, as a part of the purchase price, assumed the payment of another valid mortgage upon the cattle, then, assuming that both mortgages are valid against the cattle, the right to the possession of the cattle is determined by the priority of the respective mortgages.

Appeal from Jackson district court. Opinion filed February 10, 1912. Reversed.

*Clad Hamilton, Clay Hamilton,* and *John D. Myers,* for the appellant.

*F. T. Woodburn, E. D. Woodburn,* and *A. E. Crane,* for the appellees.

The opinion of the court was delivered by

SMITH, J.: This action in replevin was brought by the appellees in the district court of Jackson county to recover the possession of twenty-one head of steers. A trial was had to a jury, and verdict and judgment were in favor of the appellees.

An outline of the facts is as follows: Edward Sinning, a member of a partnership doing business in the name of H. Sinning, on or about December 29, 1909, purchased of T. J. Farrell and R. R. Farrell the cattle in question for his firm, and took a bill of sale, or contract, as follows:

"T. J. Farrell and R. R. Farrell now sell to H. Sinning 21 head of coming two yr. old steers now on their premises at 29 per head, total 609.00. To be paid as follows:

| | |
|---|---:|
| Sinning to pay J. Q. Myers | 281.75 |
| On account due H. Sinning | 210.00 |
| Cash receipt hereby acknowledged | 117.25 |
| | 609.00 |

"Sinnings agree to leave said cattle with Farrell one week and allow him to sell them at any figure above $609.00. Purchaser to pay H. Sinning $609.00 and Farrell to have the balance above said $609.00 as his extra profit. Farrell agrees to care and feed said cattle for one week free of cost to H. Sinning.

T. J. FARRELL.
REBECCA R. FARRELL.
H. SINNING.
DECEMBER 29-09.        ED SINNING."

No question is raised as to the good faith of the transaction or of the payments being made, except it appears that when Sinning went to pay off a mortgage of a bank, of which J. Q. Myers was the official head, he was informed that it had already been paid by the Rossville State Bank.

The Farrells are husband and wife. The husband asked a higher price for the cattle than was finally

agreed upon, and apparently the contract to leave the cattle in the possession of the sellers for one week, with authority to sell them and retain whatever he received above the purchase price paid and to be paid by Sinning, was effected as a compromise. Sinning's object in buying the cattle was to collect the account of Farrell's.

On the evening of the same day Mr. Farrell went to the house of the appellant and sold the cattle to the appellant for thirty dollars per head, and the appellant was told by Farrell that the Rossville State Bank had a claim on the cattle. On the following day appellant and wife went to the Rossville Bank and gave their note for $650 and secured it by chattel mortgage on the same cattle. From the proceeds thereof appellant paid off a mortgage executed by the former owner of these cattle which, it is contended by appellant and denied by appellees, included and fairly identified the cattle in question. The appellant received the cattle at his own place the evening of the same day he bought them, and thereafter sold them to one Grover and paid the $650 note. The appellant had no knowledge of the sale of the cattle to Sinning at the time of his purchase. Farrell delivered the cattle before the note and mortgage were given.

Error is assigned upon the admission of certain evidence over the objection of appellant, in overruling the motion for a new trial, in refusing to give each of the instructions requested by the appellant, and in the giving of each of the instructions which were given by the court. We have examined the objections to the evidence and find no substantial error.

It is urged by appellant that the instructions given present the appellees' theory of the case and fail to present appellant's theory of the case.

Instruction No. 1, given by the court, reads:

"1. Those who deal with an agent whose authority

is limited to special purposes are bound, at their peril, to know the extent of his authority.

"If you find from a preponderance of the evidence that T. J. Farrell had the authority to sell the cattle in question upon the condition that the purchaser of said cattle pay to Sinning $609.00 in cash and any balance to go to Farrell, and that Farrell attempted to sell the cattle to A. J. Sumpter upon different terms, you are instructed that the sale to Sumpter would be invalid unless you find that the Rossville State Bank had a valid chattel mortgage upon the cattle in question, and unless you further find that the plaintiffs are estopped from recovering the cattle in question, as set out in Instruction number 4."

The first paragraph of this instruction, while correct as a statement of law, might well have been omitted, as it appears Farrell did not assume to sell the cattle to the appellant as the agent for Sinning, but sold them as his own, or as belonging to himself and wife, and there is no evidence that the appellant had any information or was in any way put upon his inquiry as to the agency. However, appellant's ignorance of appellee's rights, whatever they were, conferred no right upon appellant.

At the time the appellant bought the cattle the validity of his purchase depended solely upon the question whether Sinning had previously bought the cattle in good faith and upon sufficient consideration. This issue is well stated in instruction No. 2. However, if the appellant, having bought in good faith, did thereafter pay to the Rossville bank a valid chattel mortgage upon the cattle which sufficiently identified the cattle and was prior in date of filing to the filing of the mortgage assumed by Sinning, the Rossville State Bank had the prior right of possession. Such payment by appellant would subrogate him to the rights of the Rossville State Bank as against Sinning.

There was evidence that Sinning examined the record of chattel mortgages on the day he bought the cattle for the purpose of discovering whether there was

any mortgage against them. There was also evidence that the word "coming" immediately preceding "2 yrs. old" was in the original mortgage but not in "the way it was recorded," but thereafter inserted in the record by some one other than the register of deeds or his deputy.

The statutes of the state since 1868, at least, have provided for filing but not for the recording of chattel mortgages. Section 5225 of the General Statutes of 1909 copies the statute of 1868 (Gen. Stat. 1868, ch. 68, § 10) which provides that the register of deeds shall receive and indorse such instruments, "and shall file the same in his office, to be kept there for the inspection of all persons interested." Section 5229 of the General Statutes of 1909 provides for an entry in a minute book of the description of the property mortgaged. This minute book was probably meant by the witness when speaking of the "record." We conclude that the original instrument was properly received in evidence and that appellees were bound by what it showed. Whether the mortgage was sufficient to enable a third party, aided by such inquiries as it suggested, to identify the property therein described as the property involved in the action, was a question of fact for the jury.

Instruction No. 4, considered separately, seems too favorable to appellant. It seems to imply that if, without any fault on the part of appellees, the appellant bought the cattle, relying upon the apparent title of the Farrells thereto or their authority to dispose of them, and the appellant would be the loser if the appearance were not real, the jury must find for the appellant. The real test, as we have seen, is whether appellees bought the cattle in good faith and upon a sufficient consideration. The true rule is set forth in instruction No. 2. We think instruction No. 4 should be modified.

It is apparent that the conditions set forth in each of the instructions, 2 and 4, might be true and sustained

by the evidence, in which event, so far as this part of the controversy is concerned, the appellees should recover.

The appellant requested the court to give a number of instructions which were refused. Among these was No. 8, which reads:

"VIII. If you find that the defendant purchased the stock in controversy from Thomas Farrell in good faith and as a part of the purchase price paid off the chattel mortgage to the Rossville State Bank, then I instruct you that if you find said mortgage was a valid lien upon said stock that the said defendant would be subrogated to the rights of said mortgagee to the extent to which he paid said mortgage."

We are of the opinion that this instruction should have been given, and that it was error to refuse it. In several of the instructions given the expression "unless you find that the Rossville State Bank had a valid chattel mortgage on the cattle" is used. If the Rossville State Bank and, as seems to be conceded, the State Bank of Holton, represented by Myers, each had a valid chattel mortgage on cattle given by the Farrells, the only question of fact may have been whether the description of the cattle in the Rossville bank mortgage, with the inquiries suggested thereby, was sufficient to enable a third party to identify the cattle as the cattle in controversy. Whatever may be the fact with regard to this, the appellant was entitled, under the conditions stated in refused instruction No. 8, to have the jury told that he would be subrogated to the rights of the Rossville State Bank, whatever such rights might be, if he paid off its mortgage.

The judgment is reversed and the case is remanded for a new trial.